UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

COMERCIO Y SERVICIOS
DE TRANSPORTE PRIVADO PBA S.A.
De C.V., a Mexican corporation,

    Plaintiff,

v.                                          CASE NO. 8:17-cv-1038-TGW

RDI, LLC, a Florida limited liability
Company, and ROBERT
DINICOLANTONIO, individually,

    Defendants.
_____/

## ORDER

THIS CAUSE came on for consideration upon the Plaintiff's Motion for Award of Attorneys' Fees and Costs (Doc. 150) and Plaintiff's Motion for Entry of Final Judgment, Including Costs and Attorneys' Fees (Doc. 149) against defendant RDI. RDI did not file a response to either motion.

The plaintiff, as the prevailing party on its breach of contract claim, is entitled to an award of its reasonable attorneys' fees, costs and expenses pursuant to an attorney fee provision in the contract. Accordingly, the plaintiff will be awarded attorneys' fees of $139,466.40, expenses of $29,832.76 and $3,835.89 in billable costs. Accordingly, the original judgment of $1,440,000.00 will be amended to $1,613,135.05.

I.

Plaintiff, Comercio Y Servicios De Transporte Privado PBA S.A. de C.V. (PBA), owns a Gulfstream IV SP Aircraft (s/n 1346, Tail #N273SF) (aircraft). Defendant RDI, LLC (RDI) is a company that refurbishes and customizes aircrafts.

On November 30, 2016, the parties contracted for RDI to refurbish or replace many parts of the aircraft's interior at the cost of over one million dollars (see Doc. 77-1). The plaintiff alleged that the defendant did not refurbish certain items it was contracted to do, and that other work was substandard, not completed properly and/or did not comply with federal regulations (see Doc. 77, pp. 3–4; Doc. 141, p. 10).[1]

In May 2017, the plaintiff filed this lawsuit (Doc. 1). The plaintiff asserted against RDI claims of breach of contract, negligence and fraud (Doc. 77).[2] The defendant counterclaimed that the plaintiff breached the contract because it refused to pay the balance due on the contract (Doc. 79).

After a four-day jury trial, the jury found in favor of the plaintiff on its breach of contract claim and awarded the plaintiff damages of

---

[1] Page numbers correspond to the numbers assigned by the CM/ECF system.
[2] The court dismissed the fraud claim.

$1,440,000.00 (Doc. 143). Judgment was entered accordingly (Doc. 144).

Thereafter, plaintiff's counsel filed on the plaintiff's behalf a Bill of Costs (Doc. 148); Motion for Entry of Final Judgment, Including Costs and Attorneys' Fees (Docs. 149) and Motion for Award of Attorneys' Fees and Costs and Supporting Memorandum (Doc. 150).

The plaintiff seeks an award of $172,760.50 in attorneys' fees for work performed by the law firms of Perlman, Bajandas, Yevoli & Albright, P.L., and Jimenez, Hart, Mazzitelli, LLP (Doc. 149, p. 2). "Counsel agreed to represent Plaintiff for a minimum flat rate of $75,000, and contingent on prevailing, to recover their additional fees pursuant to the fee-shifting provision contained in the underlying contract" (Doc. 150, p. 5). The fees encompass work from October 2018 through trial. Plaintiff's previous counsel, who prosecuted the case from its inception until September 2018, has not filed with the court a request for attorneys' fees. The plaintiff also requests an award of costs and expenses totaling $33,668.65 (Docs. 148, 149, p. 2). The defendant did not respond to this motion.

The court has reviewed the plaintiff's time entries and submissions. As discussed below, a reasonable attorneys' fees award is achieved by an across-the-board reduction of 20% of the request. The reduction accounts for: (1) hourly attorney rates that exceed the market rates

3

in Tampa; (2) block billing; (3) failure to show the distinct contribution of multiple attorneys doing the same tasks and (4) non-compensable attorney time. As indicated, the defendant failed to file an opposition memorandum, so it obviously did not identify any additional proper reductions.

II.

The plaintiff seeks reimbursement of its attorneys' fees and expenses pursuant to a provision in the contract which states (Doc. 77-1, p. 7):

> In connection with any action or proceeding to enforce either party's rights (whether in contract, or otherwise) and/or to collect amounts due to a party in connection with this agreement, the prevailing party, as determined by the order of the court, shall be entitled to have and recover reasonable attorney's fees, costs and expenses incurred in connection therewith.

The plaintiff is unquestionably the prevailing party in this case and, therefore, it is entitled to an award of reasonable attorneys' fees under the contract.

A reasonable attorneys' fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. Blum v. Stenson, 465 U.S. 886, 888 (1984).[3] In

---

[3]The contract does not specify a choice of law provision. The plaintiff follows the lodestar method, which is appropriate considering that the contract was drafted by a

4

this calculation, the court should exclude hours that were not reasonably expended. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). This lodestar may then be adjusted upward or downward based on other considerations. Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994). However, there is a strong presumption that the lodestar reflects a reasonable statutory fee. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552 (2010). The plaintiff does not request an increase of the lodestar.

The fee applicant bears the burden of presenting satisfactory evidence to establish that the requested rate is in accord with the prevailing market rate and that the hours are reasonable. Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988).

Furthermore, "[o]bjections and proof from fee opponents…must be specific and reasonably precise." ACLU of Georgia v. Barnes, 168 F.3d 423, 428 (11th Cir. 1999) (citation omitted). Since the defendant did not file an opposition memorandum, it is assumed that it does not oppose an award of attorneys' fees, expenses or costs. See Local Rule 3.01(b) (requiring a party opposing a motion to file within 14 days after service of the motion a response that includes a memorandum of legal authority in opposition to the request). However, even when a fee application

---

Florida company, and Florida adopted the federal lodestar approach.

is unopposed, it remains the court's duty to ensure that such an award is reasonable. See Hensley v. Eckerhart, supra, 461 U.S. at 433-34 (1983); Perez v. Carey International, 373 Fed. Appx. 907 (11th Cir. 2010).

A. Hourly Rates

The first step in the computation of the lodestar is determining the reasonable hourly rate. The prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community is the established basis for determining a reasonable hourly rate. Duckworth v. Whisenant, 97 F.3d 1393, 1396 (11th Cir. 1996).

"The general rule is that the relevant market for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." American Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999). Services of paralegals and law clerks are also compensable at market rates. Missouri v. Jenkins by Agyei, 491 U.S. 274, 288-89 (1989). "If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle [its] claims." American Civil Liberties Union of Georgia v. Barnes, supra, 168 F.3d at 437.

The party seeking fees bears the burden of establishing the

market rate and should present the court with "specific and detailed evidence from which it can determine the reasonableness of the proposed rate." Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1303. With respect to rates, an applicant may meet this burden by producing either direct evidence of rates charged under similar circumstances, or opinion evidence of reasonable rates. Id. at 1299. Satisfactory evidence is therefore "more than the affidavit of the attorney performing the work." Loranger v. Stierheim, supra, 10 F.3d at 781.

Furthermore, "[t]he court ... is itself an expert on the question [of attorneys' fees] and may consider its own knowledge and experience concerning reasonable and proper fees." Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1303 (citation omitted).

The plaintiff seeks compensation for the services of three lawyers and one paralegal from the law firm of Perlman, Bajandas, Yevoli & Albright, P.L., and two attorneys from the law firm of Jimenez, Hart & Mazzitelli L.L.P. (Doc. 150-1, pp. 2–36). D. Porpoise Evans of Perlman, Bajandas, Yevoli & Albright, P.L., was lead counsel. Evans states that he has over "15 years' experience litigating commercial disputes in both federal and state court as well as being called upon to represent clients before administrative agencies" (Doc. 150, p. 4). Maria Zucker "served as the

senior paralegal in this case and has over 20 years of experience" (id.). Evans "customarily bills at a rate of $395-$450/hour" and requests compensation at an hourly rate of $425 (id., pp. 4–5). Evans does not explain why an hourly rate at the midpoint of his customary range is warranted. Zucker's hourly rate is $120.

Attorneys Carlos Jimenez and Gabriel Mazzitelli from the law firm of Jimenez, Hart & Mazzitelli also represented the plaintiff in this case. Jimenez and Mazzitelli "have been licensed [to practice] since 2012 and 2010, respectively, and also dedicate a significant portion of their practice to litigating commercial disputes" (id., p. 4). They each request an hourly rate of $425 (id., p. 5).

Evans asserts in his verified motion that "[t]hese rates sought by Plaintiff's counsel are in line with similar awards in this judicial district. The rates set forth above are in line with the prevailing market rates for counsel with the abilities, experience, qualifications, skill and reputation of Plaintiff's attorneys" (id.).

Other than Evans' conclusory statement, the plaintiff has not submitted any evidence supporting the reasonableness of these rates. This is patently insufficient. Thus, satisfactory evidence of a reasonable hourly rate is "more than the affidavit of the attorney performing the work." Loranger

v. Stierheim, supra, 10 F.3d at 781. Thus, "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits." Martinez v. Hernando County Sheriff's Office, 579 Fed. Appx. 710, 713 (11th Cir. 2014). Moreover, the persuasiveness of Evan's averment is diminished by the fact that the attorneys' law firms are located not in this area, but in Miami. See American Civil Liberties Union of Georgia v. Barnes, supra, 168 F.3d at 437 (The rate of attorney's fees is that of the place where the case is filed.).

While the hourly rate of $425 may be acceptable for this type of case in South Florida, where the attorneys are located, South Florida's hourly rates are generally higher than those in the Tampa area. Furthermore, the plaintiff did not show "a lack of attorneys practicing in [Tampa] who [we]re willing and able to handle [its] claims." Id.

Moreover, based on my experience, the requested hourly rates are on the high side for a commercial breach of contract case in Tampa. See Norman v. Housing Authority of the City of Montgomery, supra, 836 F.2d at 1303 (the court is itself an expert); see also Brancato v. Cotrone, No. 5:18-CV-368-OC-30PRL, 2019 WL 6051432 at *2 (M.D. Fla. Nov. 15, 2019) ("A rate of $425 an hour is substantially higher than rates typically awarded in the Middle District of Florida."). As indicated, Evans does not explain why an hourly rate at the midpoint of his customary range is warranted, and only

the bare facts are given regarding Jimenez's and Mazzatelli's experience.[4] Therefore, there is no basis to pay above market rates. In sum, the plaintiff has failed to satisfy its burden of providing evidence that would support the claimed rates.

On the other hand, the defendant does not challenge this request and, thus, has not argued what is a reasonable hourly rate. Therefore, as discussed infra, pp. 15–16, the excessive rates will be accounted for in an across-the-board 20% reduction of the attorneys' fees.

B. Reasonableness of the Number of Hours Expended

The second step in the lodestar analysis is to determine what hours were reasonably expended on the litigation. In calculating this amount, the court should exclude excessive, unnecessary and redundant hours, and time spent litigating discrete and unsuccessful claims. Duckworth v. Whisenant, supra, 97 F.3d at 1397. The plaintiff seeks compensation for 439 hours of work from October 2018 through the trial. Evans states that the core tasks were as follows (Doc. 150, p. 6):

---

[4]Plaintiff's counsel asserts in a conclusory manner that the court should consider "[t]he undersigned counsel was precluded from taking or working in other cases in an effort to dedicate a significant amount of time to this action" (Doc. 150, p. 6). Counsel offered no explanation or evidence to support that claim. Therefore, it is rejected. See George v. GTE Directories Corp., 114 F. Supp. 2d 1281, 1288 (M.D. Fla. 2000).

> reviewing documents, writing letters, engaging in discovery, preparing fact and expert witnesses (in English and Spanish), discussing the case, conducting research, writing motions or briefs, attending judicial conferences and hearings, conferences with opposing counsel and with clients...and conducting the trial itself.

As indicated, "[t]he fee applicant bears the burden of ... documenting the appropriate hours...." Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1303. With respect to hours, if an applicant's documentation is inadequate, the district court may reduce the award accordingly. Hensley v. Eckerhart, supra, 461 U.S. at 433. Thus, "fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1303. Furthermore, excessive, redundant, or otherwise unnecessary hours should be excluded from the amount claimed. Id. at 1301. In other words, fee applicants must use billing judgment. Id. "[W]here the time ... claimed seem[s] expanded or there is a lack of documentation or testimonial support the court may make the award on its own experience." Id. at 1303.

Similarly, "[o]bjections and proof from fee opponents

concerning hours that should be excluded must be specific and reasonably precise." American Civil Liberties Union of Georgia v. Barnes, supra, 168 F.3d at 428, quoting Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1301. In all events, "the district court still must determine whether time was reasonably expended, and if it was not, that time should be excluded from the fee calculation." Perez v. Carey International, Inc., supra, 373 Fed. Appx. at 911. Thus, "the Court must act...as a gatekeeper of reasonableness without the benefit of an adversarial party." Rodriguez v. AMD Group of South Florida, Inc., 623 F. Supp. 2d 1352, 1354 (S.D. Fla. 2007).

Plaintiff's counsel submitted to the court their time records (see Doc. 150-1). However, many of the entries are sparse and conclusory, which hinders the court's ability to assess the reasonableness of the time spent on tasks. For example, multiple entries are simply labeled as "trial prep" (for as long as 8 and 12 hours in a day), without any indication of what tasks were done during those hours (see id., pp. 22, 31–32). Furthermore, counsel billed 12 hours on each of three of the trial days (see id., pp. 24, 32–33), but fail to identify what they did outside trial, as court was not in session anywhere near that amount of time (see, e.g., Doc. 138 (five hours); Doc. 140 (less than

three hours)).[5]

This is a type of impermissible block billing, but without the benefit of identifying the tasks within those time periods. Ceres Environmental Services, Inc. v. Colonel McCrary Trucking, LLC, 476 Fed. Appx. 198, 203 (11th Cir. 2012) ("Block billing" occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task.). Thus, the "imprecision of the billing records submitted by the plaintiff[] makes it difficult, if not impossible, to calculate with any precision the number of hours an attorney devoted to a particular task in this litigation." American Civil Liberties Union of Georgia v. Barnes, supra, 168 F.3d at 429; see also Dial HD, Inc. v. ClearOne Communications, 536 Fed. Appx. 927, 931 (11th Cir. 2013). Here, the circumstance is more problematic because counsel did not even identify the tasks performed during that time.

This detail is required not only by Norman, but it is essential in this case because there are three attorneys billing at an hourly rate of $425 for tasks with the same descriptions. "There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be

---

[5]The imprecision of the time records is also exemplified by two of Evans' time entries on January 13, 2019, in which it appears that Evans erroneously claimed a total of 25.8 hours related to the aircraft inspection (see Doc. 150-1, pp. 13–14).

compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1302. However, it is the fee applicant's burden to show that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case. American Civil Liberties Union of Georgia v. Barnes, supra, 168 F.3d at 432. The plaintiff did not satisfy that burden. Neither the billing records nor other submissions shed any light on the distinct contribution of each attorney. For example, there is no discussion of why it was necessary for three attorneys to travel to Canada for the aircraft inspection or that three attorneys (from two law firms) were reasonably required to prosecute this trial.

Another example of a lack of billing judgment is counsel's failure to eliminate travel time between Miami and Tampa (see Doc. 150-1, pp. 2, 24, 27, 33). Counsel failed to show a lack of counsel in the Tampa area capable of handling this case and, therefore, they may not recover fees for attorney travel time to attend court proceedings. See Martinez v. Hernando County Sheriff's Office, supra, 579 Fed. Appx. at 714 (excluding out-of-town counsel's travel time to court proceedings); Johnson v. University College of University of Alabama in Birmingham, 706 F.2d 1205, 1208 (11th Cir. 1983). As stated in Cruz v. Arnold, No. 10-23048-

14

CIV, 2012 WL 13075614 at *8 (S.D. Fla. Feb. 13, 2012):

> [Al]though certainly appropriate for the clients' benefit, [it] is not appropriate to include in the fee application against the non-prevailing party because local counsel would have made extended travel time unnecessary. As the record does not support as essential the presence or use of out-of-area counsel in the case, travel time cannot be approved.

In sum, counsel failed to adequately document the time spent on tasks which raises concerns of duplication and/or excessive time that is not chargeable to the opposing party. Furthermore, there are instances in which they did not exercise billing judgment. And, as indicated, counsel's hourly rates are too high (see supra, pp. 8–10). Therefore, a substantial reduction of attorney hours is necessary in order to attain a reasonable attorneys' fees award.

"When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008). Although each time entry has been reviewed, a general reduction of the number of hours is appropriate under the circumstances of this case. See Ceres Environmental Services, Inc. v. Colonel McCrary Trucking, LLC, supra, 476 Fed. Appx. at 203. Thus, "[c]ourts [particularly] have...approved

15

across-the-board reductions in block-billed hours to offset the effects of block billing." Id.; see, e.g., Dial HD, Inc. v. ClearOne Communications, supra, 536 Fed. Appx. at 931 (approving a 25% across-the-board reduction to the fees because block billing made "it difficult to ascertain how much time was spent on each task"). It is also supported by the Supreme Court's statement that fee disputes should not result in second major litigation. Hensley v. Eckerhart, supra, 461 U.S. at 437.

In this regard, I find that an across-the-board cut of 20% of the requested fees is clearly warranted. See Dial HD, Inc. v. ClearOne Communications, supra, 536 Fed. Appx. at 931; see also Fox v. Vice, 563 U.S. 826, 828 (2011) ("[T]rial courts may take into account their overall sense of a suit and may use estimates in calculating and allocating an attorney's time."). Although arguably the defendant may have been able to show a further reduction was warranted, it failed to file an opposition memorandum.

Counsel's time records show the total attorneys' fees for the Perlman firm was $82,830.50 (Doc. 150-2, p. 26)[6] and the Jimenez firm's charges were $88,740.00 (id., p. 33), for a total of $171,570.50. Additionally, Evans stated that he spent 6.5 hours "researching, calculating

---

[6]The motion states $84,020.50 (Doc. 149, p. 2, ¶7).

and preparing this Motion for Award of Attorneys' Fees and Costs" that was not included on the time sheets (Doc. 150, p. 6). That sum is $2,762.50. Therefore, the total attorneys' fees request substantiated by evidence is $174,333.00. After the 20% reduction, a reasonable attorneys' fees award is $139,466.40.

III.

A. The plaintiff, under the rubric of "Costs," requests reimbursement of expenses totaling $29,832.76 (see Doc. 150-2, pp. 2–4). These expenses comprise transportation, lodging and meals incurred in the prosecution of this lawsuit (see id.). The plaintiff attached copies of receipts that substantiate these expenses (id., pp. 5–76).

As the plaintiff identifies, the contract specifies that the prevailing party is entitled to recover its expenses incurred in connection with a lawsuit to enforce the contract (see Doc. 77-1). The defendant does not dispute entitlement to, or the amount of, any of these expenses. Therefore, in accordance with the contract, the plaintiff will be awarded expenses of $29,832.76.

B. The plaintiff also seeks reimbursement for taxable costs of $3,835.89 pursuant to Rule 54(d)(1), F.R.Civ.P. (Doc. 148). Rule 54(d)(1) affords the prevailing party recovery of costs identified in 28 U.S.C. 1920.

17

See Crawford Fitting Co. v. J. T. Gibbons, Inc., 482 U.S. 437, 442 (1987). The plaintiff itemized in its Bill of Costs witness attendance fees ($120), service of process ($75), transcripts ($1,331.60), photocopying necessarily obtained for use in the case ($637.29) and costs of interpreters ($1,672). Each of these items is compensable under 28 U.S.C. 1920. Furthermore, the plaintiff has submitted copies of receipts showing that it incurred these costs (Doc. 148, Comp. Ex. 1). The defendant has not filed any objection. Therefore, costs of $3,835.89 will be assessed against the defendant. Although the plaintiff did not include this sum in its proposed final judgment, it will be added to the amended judgment.

## IV.

For the foregoing reasons, the $1,440,000.00 judgment will be amended to include reasonable attorneys' fees of $139,466.40; expenses totaling $29,832.76 and costs of $3,835.89. This amounts to a final judgment of $1,613,135.05.

It is, therefore, upon consideration,

ORDERED:

1. That the Plaintiff's Motion for Award of Attorneys' Fees and Costs (Doc. 150) is hereby **GRANTED to the extent** that the plaintiff is awarded $139,466.40 in attorneys' fees, $29,832.76 in expenses and costs

of $3,835.89.

2. That the Plaintiff's Motion for Entry of Final Judgment, Including Costs and Attorneys' Fees (Doc. 149) be, and the same is hereby, **GRANTED to the extent** that the Clerk is directed to amend the judgment in this case in favor of the plaintiff and against defendant RDI in the amount of $1,613,135.05.

DONE and ORDERED at Tampa, Florida, this 17th day of January, 2020.

*[signature: Thomas G. Wilson]*

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE